**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Edwards,<br><br>    Plaintiff,<br><br>v.<br><br>Vemma Nutrition, et al.,<br><br>    Defendants. | No. CV-17-02133-PHX-DGC<br><br>**ORDER** |

Defendant Vemma Nutrition Company ("Vemma") has filed a motion to compel arbitration and dismiss Plaintiff's first amended complaint. Doc. 18. The motion is fully briefed, and the Court heard oral argument on January 5, 2018. The Court will grant the motion.

**I.    Background.**

Vemma sells nutrition and wellness products directly to customers and through a network of independent contractors called Affiliates.[1] Doc. 18 at 2; Doc. 18-1 at 6 ¶ 7. To become an Affiliate, an individual must agree to certain contractual terms and conditions. Doc. 18 at 2.

On December 27, 2007, Plaintiff enrolled as an Affiliate by accepting an online agreement titled "Vemma Policies and Agreement" ("the Agreement"). *Id.* The

---

[1] Affiliates were previously known as "Members." *See* Doc. 18 at 2. The 2007 Agreement discussed below refers to "Members" but later documents, such as the 2015 policies and procedures, refers to "Affiliates."

Agreement provided that Plaintiff would abide by Vemma's "marketing plan and policies and procedures" that were "incorporated as part of this agreement." Doc. 18-1 at 6 ¶ 4. One such policy was Vemma's "Cost Effective Dispute Resolution/Waiver of Jury Trial" provision ("the Arbitration Provision"), which provides that arbitration is "the sole and exclusive procedure for resolution of disputes between the parties." *Id.* at 14.

Plaintiff remained an Affiliate until July 15, 2015, when Vemma terminated him due to "repeated violation of Vemma's policies and procedures." Doc. 25 at 3; Doc. 25-1 at 4 ¶ 7(e). Plaintiff subsequently filed this case against Vemma and other defendants, alleging copyright infringement, breach of contract, unjust enrichment, and racketeering. Doc. 13.

**II.     Legal Standard.**

The Federal Arbitration Act ("FAA") "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Thus, "[a] party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). If a valid agreement to arbitrate encompasses the dispute at issue, the FAA requires the court "to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

**III.    Analysis.**

Vemma argues that the Arbitration Provision requires arbitration of any dispute relating to any relationship between Vemma and its distributors. Doc. 18 at 1, 3. Plaintiff counters that the Arbitration Provision is unenforceable because he did not

assent to its terms and because the provision is unconscionable, both procedurally and substantively. Doc. 24 at 1. Even if the Arbitration Provision is enforceable, Plaintiff contends, his copyright infringement and breach of contract claims fall outside its scope. *Id.* at 10-15.

### A. Enforceability of the Arbitration Provision.

Vemma argues that Plaintiff agreed to arbitrate his claims when he agreed to become an Affiliate in December 2007. Doc. 18 at 5-6. Plaintiff argues that he never agreed to the Arbitration Provision. Doc. 24 at 4-6. Plaintiff also argues that the provision is procedurally and substantively unconscionable. *Id.* at 6-10.

#### 1. Assent.

Plaintiff contends that he "was not even aware that he was being signed up as an affiliate." Doc. 24 at 6. He asserts that other individuals enrolled him as an Affiliate without his knowledge or authorization. *See* Doc. 24-1 at 3 ¶¶ 2-3. Plaintiff also argues that he "did not see the Policies and Agreement for Affiliates" and thus "could not have provided assent to the terms." Doc. 24 at 6. The Court rejects both arguments.

When determining whether parties have agreed to arbitrate, courts apply ordinary state law principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Both parties agree that Arizona law applies. Doc. 18 at 5; Doc. 24 at 7-9.

To form a valid contract under Arizona law, "there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co., Inc. v. Homes & Son Const. Co., Inc.*, 542 P.2d 817, 819 (Ariz. 1975). "Thus, a defendant seeking to compel arbitration must show that the plaintiff accepted the arbitration agreement." *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 366 P.3d 1016, 1019 (Ariz. Ct. App. 2016). An agent can accept a contract, including an arbitration provision, on behalf of a principal, *id.*, and agency can be established by contract, by facts which raise the implication of agency, by ratification, or by estoppel, *Daru v. Martin*, 363 P.2d 61, 66 (Ariz. 1961) (citing *Bristol v.*

*Moser*, 99 P.2d 706 (Ariz. 1940)). Arizona courts have long recognized that a principal ratifies an agent's unauthorized acceptance of a contract if the principal "has knowledge of all the facts surrounding the contract made by the agent" and "accepts the benefits of the contract." *Mut. Benefit Health & Accident Ass'n v. Neale*, 33 P.2d 604, 608 (Ariz. 1934). Ratification "may be express or implied, and intent may be inferred from the failure to repudiate an unauthorized act . . . or from conduct on the part of the principal which is inconsistent with any other position than intent to adopt the act." *United Bank v. Mesa N. O. Nelson Co.*, 590 P.2d 1384, 1386 (Ariz. 1979) (quoting *Thermo Contracting Corp. v. Bank of N.J.*, 354 A.2d 291 (N.J. 1976)).

In his declaration, Plaintiff states that "[his] agent," Walter Bratten, enrolled him as an Affiliate "without [his] knowledge or permission" on December 27, 2007. Doc. 24-1 at 3 ¶ 3. Even if this is true, Plaintiff ratified Bratten's acceptance of the Agreement. First, Plaintiff acknowledges that he "learned that Mr. Bratten had logged into Vemma's member website to sign [him] up as a member." *Id.* After learning this fact, Plaintiff neither disavowed Bratten's acts nor terminated his Vemma membership. Instead, he actively participated as an Affiliate between 2007 and 2015, which required Plaintiff to renew his membership each year. *See* Doc. 18-1 at 6 ¶ 5. Second, Vemma paid Plaintiff his first commission on January 9, 2008, two weeks after his initial enrollment as an Affiliate. Doc. 25-1 at 3 ¶ 5. During his eight years as an Affiliate, Plaintiff received and cashed at least 45 commission checks from Vemma, and each check included endorsement language stating that "I have read, agreed with and am in compliance with current Vemma policies and procedures." *Id.* at ¶ 6. Lastly, when Vemma terminated Plaintiff's membership in July 2015, Plaintiff emailed Vemma's compliance manager and requested that Vemma "give me back my affiliate spot," stating that he "never disregarded Vemma's policies" and "[has] always done everything in [his] power to enforce all of Vemma's policies[.]" *Id.* at 21, 23. Thus, even if Bratten enrolled Plaintiff as an Affiliate without his authorization, Plaintiff ratified the enrollment by

continuing as an Affiliate, accepting financial benefits, and agreeing to abide by Vemma's terms and conditions.

At oral argument, Plaintiff's counsel informed the Court that Plaintiff's declaration incorrectly describes his enrollment. According to counsel, Bratten was indeed Plaintiff's agent, but he enrolled Plaintiff as an Affiliate sometime in November 2007, not December 2007. *See* Court's Livenote Tr. at 23-24 (Jan. 5, 2018). Upon learning this, counsel asserted, Plaintiff sent Bratten a letter disavowing his registration as an Affiliate. *Id.* Counsel argued that another individual who was not Plaintiff's agent – Tom Alkazin – enrolled Plaintiff as an Affiliate on December 27, 2007, without Plaintiff's authorization. *Id.* at 25-26, 30. Counsel asserted that Plaintiff learned of this December 2007 enrollment when he received an email from Vemma approximately two weeks later informing him of his registration. *Id.* Counsel acknowledged that Plaintiff never disavowed this December 2007 enrollment, arguing that Plaintiff did not think he was enrolled as an Affiliate who markets and sells Vemma's products, but rather as a doctor who would speak about mangosteen, a fruit used in Vemma products. *Id.* at 24-26, 31. Counsel also stated that Plaintiff did not want to disavow his affiliation with Vemma because he and his family personally consumed Vemma's products. *Id.* at 25. Counsel acknowledged that none of these facts are contained in the record, including the disavowal letter Plaintiff allegedly sent to Bratten. *Id.* at 31.

Even if these new facts are accepted as true, they do not change the Court's decision. Ratification of a contract does not depend on the existence of an actual agency relationship at the time the contract is accepted. "'Ratification is the affirmance by a person of a prior act which does not bind him but which was done or professedly done on his account,'" and it "recasts the legal relations between the principal and agent as they would have been had the agent acted with actual authority." *Fid. & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 263 P.3d 633, 639 (Ariz. Ct. App. 2011) (quoting the Restatement (Second) of Agency § 82 (1958)). Thus, whether Alkazin was Plaintiff's actual agent is

irrelevant because Plaintiff clearly manifested assent after Alkazin purported to act on his behalf. Plaintiff received notice of Alkazin's December 2007 registration and never disavowed it; he accepted commission checks from Vemma for eight years; and when he was terminated as an Affiliate, Plaintiff emailed Vemma and asked to be reinstated, avowing that he "never disregarded" Vemma's policies and procedures. Doc. 25-1 at 21, 23.

The fact that Plaintiff did not see Vemma's policies and procedures, which include the Arbitration Provision, does not mean that he did not agree to the Arbitration Provision. Under Arizona law, a contracting party agrees to terms and conditions in an extrinsic document if the agreement being executed clearly and unequivocally refers to the extrinsic document, the party consents to the incorporation by reference, and the terms of the incorporated document are "known or easily available to the contracting parties." *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 420 (Ariz. Ct. App. 1983) (quoting 17A C.J.S. Contracts § 299 at 136 (1963)). If a party consents to the incorporation by reference, the party "is presumed to know its full purport and meaning." *Indus. Comm'n v. Ariz. Power Co.*, 295 P. 305, 307 (Ariz. 1931). A contracting party, therefore, need not see the incorporated document if the document is easily available. *See Weatherguard Roofing Co. v. D.R. Ward Constr. Co.*, 152 P.3d 1227, 1230 (Ariz. Ct. App. 2007) (concluding that the arbitration clause was incorporated by reference even though the extrinsic document was not attached to the contract).

The Court finds sufficient evidence that Plaintiff knew about or could easily have accessed the Arbitration Provision. The Agreement expressly states that Plaintiff has "carefully reviewed, understand[s], and agree[s] to abide by [Vemma's] marketing plan and policies and procedures, and acknowledge[s] that they are incorporated as part of this agreement[.]" Doc. 18-1 at 6 ¶ 4. This language expressly incorporates by reference Vemma's policies and procedures, which include the Arbitration Provision. And before completing enrollment, a PDF copy of Vemma's policies and procedures popped up on the screen before his agent could click "OK." Doc. 18-1 at 3 ¶ 2. Plaintiff also concedes

that Vemma's policies and procedures were available on Vemma's website's homepage during his enrollment in December 2007 and re-enrollment each year thereafter. Court's Livenote Tr. at 29.

In sum, the Court finds that Plaintiff assented to the Agreement by ratifying his enrollment, and that the Agreement clearly incorporated the Arbitration Provision. This is sufficient to subject Plaintiff to the Arbitration Provision under Arizona law. *See Pinto v. USAA Ins. Agency Inc. of Texas (FN)*, No. CV17-00873-PHX-DGC, 2017 WL 3172871, at *3 (D. Ariz. July 26, 2017).

### 2. Unconscionability.

Unconscionability is a generally applicable contract defense that may render an arbitration agreement unenforceable under the FAA, *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996), and it is determined according to the laws of the state of contract formation, *Chalk*, 560 F.3d at 1092. Under Arizona law, the plaintiff bears the burden of proving the unenforceability of an arbitration provision, and the determination is made by the Court as a matter of law. *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 56 (Ariz. 1995); *see also Tabel v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *2 (D. Ariz. Nov. 13, 2006). The Court concludes that the unilateral modification clause is substantively unconscionable.

#### a. Procedural Unconscionability.

Procedural unconscionability arises from unfairness in the bargaining process. It "is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Maxwell*, 907 P.2d at 57-58.

Plaintiff contends that the Arbitration Provision is unenforceable because the Agreement is an adhesion contract. Doc. 24 at 6. But adhesion contracts are not per se unconscionable under Arizona law. *See Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 840 P.2d 1013, 1016 (1992) (holding that adhesion contract is valid and enforceable unless it is otherwise unconscionable or beyond the range of reasonable expectations).

Plaintiff also reasserts his earlier argument that his agent, not he, assented to the agreement. Doc. 24 at 9. But an agent's unauthorized acceptance of a contract does not render the contract procedurally unenforceable if the principal subsequently ratifies the agreement. *United Bank*, 590 P.2d at 1386. As noted above, Plaintiff ratified his agent or purported agent's acceptance of the Agreement.

### b.  **Substantive Unconscionability.**

Substantive unconscionability is concerned with the relative fairness of the actual contract terms. *Maxwell*, 907 P.2d at 58. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*

Plaintiff argues that the Arbitration Provision is substantively unconscionable because the Agreement contains a unilateral modification provision. Doc. 24 at 9-10. The Agreement provides that Vemma "may modify or amend its policies and procedures and marketing program at any time." Doc. 18-1 at 6 ¶ 3. Moreover, under the terms of the Agreement, Vemma need not notify its Affiliates of modifications to the policies and procedures. Vemma instead imposes on Affiliates "a duty to keep current on policy and marketing changes by reviewing the current policies and procedures located on www.govemma.com on a regular basis to ensure . . . familiarity." *Id.* Vemma's unilateral right to modify extends to its Arbitration Provision with Plaintiff, which is located in Vemma's policies and procedures. *Id.* at 13.

The unilateral modification provision is particularly salient in this case because Vemma modified its Arbitration Provision with Plaintiff. When Plaintiff enrolled as an Affiliate in December 2007, the Arbitration Provision provided that the parties must arbitrate "[i]f a dispute arises relating to any relationship between or among Vemma, its officers, employees, distributors or vendors or arising out of any products or services sold by Vemma" ("2007 Arbitration Provision"). Doc. 18-1 at 13. The Arbitration Provision in effect when Vemma terminated Plaintiff in July 2015 states that the parties must

arbitrate "[i]f a dispute arises relating to any relationship between or among Vemma, *its Affiliates*, officers, employees, distributors or vendors or arising out of any products or services sold by Vemma" ("2015 Arbitration Provision"). *Id.* at 17 (emphasis added). Thus, Vemma unilaterally expanded the Arbitration Provision to encompass disputes between Vemma and Plaintiff as an Affiliate.

The Court concludes that the unilateral modification provision is, in the context of the arbitration agreement, substantively unconscionable. It purports to grant Vemma an unfettered right to change the terms of arbitration altogether, including requiring Plaintiff to arbitrate a dispute he did not originally agree to arbitrate. Such a modification contradicts the fundamental contract principle that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc.*, 475 U.S. at 648; *see also Demasse v. ITT Corp.*, 984 P.2d 1138, 1144 (Ariz. 1999) (noting the "traditional contract law" rule that, once a contract is formed, "a party may no longer unilaterally modify the terms" unless there is assent to and consideration for the offer to modify); *Yeazell v. Copins*, 402 P.2d 541, 545 (Ariz. 1965) ("A contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party."); *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1029 (Ariz. Ct. App. 1992) ("One party to a written contract cannot unilaterally modify it without the assent of the other party.").

To remedy a contract with a substantively unconscionable provision, a court under Arizona law "may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result." Restatement (Second) of Contracts § 208 (1981); *see also Maxwell*, 907 P.2d at 60 (citing Restatement (Second) of Contracts § 208 for the proposition that a court may refuse enforcement of contract altogether if the contract contains substantively unconscionable terms). "If it is clear from its terms that a contract was intended to be severable, the court can enforce the

lawful part and ignore the unlawful part." *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986).

Plaintiff argues that the Court should decline to enforce the entire Arbitration Provision because the Agreement contains the unilateral modification clause. *See* Doc. 24 at 9-10. The Court does not agree. First, Vemma's policies and procedures include a severability clause, which provides that "only the invalid portion(s) of the provision shall be severed and the remaining terms and provisions shall remain in full force and effort." Doc. 18-1 at 14. The Agreement therefore contemplates that any unenforceable provision be severed. Furthermore, this is not a case in which multiple unconscionable terms "permeated the arbitration provision in such a way as to invalidate the entire arbitration agreement." *Cooper v. QC Fin. Servs., Inc.*, 503 F.Supp.2d 1266, 1290 (D. Ariz. 2007). The unilateral modification provision is the only unconscionable provision in the Agreement, and it is not located within the Arbitration Provision itself. The Court will sever the Agreement's unilateral modification provision.[2]

### 3. The 2007 Arbitration Provision Governs.

Severance of the unilateral modification provision does not invalidate the Arbitration Provision, and, as noted earlier, there are two different versions of the provision at issue here: the 2007 Arbitration Provision, which does not include the term "Affiliates," and the 2015 Arbitration Provision, which does include "Affiliates."

Because Vemma did not have power to modify the Arbitration Provision unilaterally, the 2015 version would be valid only if it was adopted by mutual consent of the parties. In *Demasse*, the Arizona Supreme Court held that such a change requires: "(1) an offer to modify the contract, (2) assent to or acceptance of that offer,

---

[2] At oral argument, the Court raised the question of whether the unilateral modification provision is unenforceable under *Demasse v. ITT Corp.*, 984 P.2d 1138 (Ariz. 1999). *Demasse* held that an employer may unilaterally change an at-will employment contract, but may not so change a contract with a non-at-will employee. *Id.* at 1143-46. If Plaintiff falls in the latter category, Vemma would have no power unilaterally to change the Agreement. The Agreement, however, states that an Affiliate is "an independent contractor" and "not an employee." Doc. 18-1 at 6 ¶ 7, 7 ¶ 11. In light of the conclusion that the modification provision is unconscionable, the Court need not decide whether *Demasse* applies to independent contractors.

and (3) consideration." 984 P.2d at 1144. Vemma has not shown that Plaintiff assented to the addition of the term "Affiliates" to the Arbitration Provision. It is not sufficient that Vemma required Plaintiff to remain abreast of changes to the Arbitration Provision because "[l]egally adequate notice is more than . . . awareness of or receipt of the newest [policy]." *Id.* at 1146. And the fact that Plaintiff received at least 45 commission checks which included endorsement language stating that "I have read, agreed with and am in compliance with current Vemma policies and procedures" is likewise inadequate. *See* Doc. 25-1 at 3 ¶ 6. There is no evidence that Plaintiff received or endorsed any of these checks after April 1, 2015, when the 2015 Arbitration Provision was in effect. Furthermore, Vemma provides no evidence that the 2015 modification was supported by consideration. The Court accordingly concludes that the 2015 amendment to the Arbitration Provision is not enforceable.

The 2007 Arbitration Provision, on the other hand, is binding on Plaintiff. He ratified his enrollment as an Affiliate in December 2007 and thereby assented to the Agreement, which incorporated the 2007 Arbitration Provision.

### B. Arbitrability of Claims.

The 2007 Arbitration Provision provides in relevant part:

> If a dispute arises relating to any relationship between or among Vemma, its officers, employees, distributors or vendors or arising out of any products or services sold by Vemma, it is expected that the parties will attempt, in good faith, to resolve any such dispute in an amicable and mutually satisfactory way. However, all such disputes shall be governed by this provision.
>
> \* \* \*
>
> If differences cannot be resolved by mediation, the Parties agree that in order to promote to the fullest extent reasonably possible a mutually amicable resolution of the dispute in a timely, efficient, and cost-effective manner, they will waive their respective rights to a trial by jury and settle their dispute by submitting the controversy to arbitration . . . .

Doc. 18-1 at 13.

Vemma argues that Plaintiff is a "distributor" within the meaning this provision, and that the Arbitration Provision governs because it covers disputes "relating to any relationship between or among Vemma, [and] its . . . distributors[.]" *Id.;* Doc. 18 at 1, 3. Plaintiff does not specifically address the "distributor" issue, but argues that any interpretation that would bring his claims within the scope of the Arbitration Provision is unreasonable because his claims do not relate to the sale of Vemma products, but instead concern services and products Plaintiff developed and sold. Doc. 24 at 13-14.

Although general state contract law governs the validity of an arbitration clause, "the scope of the arbitration clause is governed by federal law." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 297 (2010).

The parties have submitted only portions of the Agreement with their briefing, and none of them defines the term "distributor." But other portions of the Agreement provide insight into its meaning. Before discussing these provisions, it should be noted that the 2007 version of the Agreement referred to Plaintiff as a "Member" (Doc. 18-1 at 6-8, 12-14), while the 2015 version referred to persons in his position as "Affiliates" (Doc. 18-1 at 16-18). Vemma asserts that the name Member was changed to Affiliate and that they represent the same position within the Vemma organization. Doc. 18 at 2. Plaintiff does not dispute this fact.

With these terms in mind, the language of the 2007 Agreement and some of Plaintiff's admissions shed light on the meaning of "distributor." The 2007 Agreement contains this provision: "If I am a Member who chooses to enroll other Members, I must fulfill the obligation of performing a bona fide supervisory, *distributing* and selling function in the sale or delivery of product to the ultimate consumer[.]" Doc. 18-1 at ¶ 9

(emphasis added). Vemma's compliance manager submitted a declaration that Plaintiff "personally enroll[ed] 20 additional Vemma Affiliates and Customers" (Doc. 25-1 at 3), which would bring him within this provision and impose on him the duty of "distributing." The 2007 Agreement also states that "no fees have been or will be required from Members for the right to *distribute* the Company's products." Doc. 18-1 at 7 ¶ 11 (emphasis added). This language suggests that Plaintiff had the right to distribute Vemma products and the responsibility to oversee distribution by the Members below him.

Plaintiff's amended complaint also suggests that he viewed persons in the position of a Member or Affiliate as distributors:

> From its founding in 2004 and continuing until September 2015, Vemma sold products through its websites and a series of independent *distributors*. As a result of selling Vemma products, independent *distributors* could potentially earn a share of the revenue from their own product sales as well as those from a network of distributors that the independent *distributor* developed.
>
> * * *
>
> On information and belief, Vemma entered into *distribution agreements* with various third parties to act as independent *distributors* of Vemma's products. *As part of this agreement, the third party would be deemed a "Vemma Affiliate" and would stand to earn commissions based off Vemma products that were sold.* As part of these *distribution agreements*, Vemma would collect a certain percentage of the revenue received by the Vemma Affiliate. Vemma further promised that its Vemma Affiliates could maximize earnings by enrolling others either as affiliates or customers.

Doc. 13 at 4 ¶¶ 14, 16 (emphasis added).

These allegations equate Vemma Affiliates – or, in 2007, Vemma Members – with distributors. They describe Affiliates as entering into "distribution agreements" to earn commissions. And other evidence shows that Plaintiff viewed himself as a Vemma Affiliate. When he was terminated in July 2015, Plaintiff emailed Vemma's compliance manager and requested that Vemma "give me back my affiliate spot." Doc. 25-1 at 21.

- 13 -

He also referred to "my residual affiliate income" and to other doctors who were not "affiliates with your company like I am." *Id.* at 23.

From the language of the 2007 Agreement, the admission in Plaintiff's amended complaint, and this evidence, it appears that Members or Affiliates were entitled to distribute Vemma products, Plaintiff was such a person, and Plaintiff is therefore fairly characterized as a "distributor" within the meaning of the Arbitration Provision.

But the 2007 Agreement is not uniformly clear. It also states that "the position of Member does not constitute either a sale of a franchise or distributorship[.]" Doc. 18-1 at 7 ¶ 11. The Court can find nothing in the materials submitted by the parties that defines "distributorship," but its use in this phrase would suggest it meant something akin to a franchise.

On balance, the Court concludes that the 2007 Agreement is ambiguous as to the meaning of "distributor." Although the evidence leans in favor of finding that "distributor" includes Members or Affiliates, the Agreement remains unclear.

The Supreme Court has instructed that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650 (internal quotation marks, brackets, and citation omitted). The Ninth Circuit has explained that this "presumption in favor of arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand, and we adhere to the presumption and order arbitration only where the presumption is not rebutted." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009) ("The presumption in favor of arbitration, however, does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." (quotation marks and citation omitted)).

Because the meaning of "distributor" in the Arbitration Provision is ambiguous, and the Court does not find that the presumption of arbitrability has been rebutted by Plaintiff (for reasons discussed above with respect to his arguments that he never agreed to arbitrate), the Court will apply the presumption in this case and construe "distributor" to include Plaintiff as a Member and Affiliate. It cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" Plaintiff. *AT&T Techs., Inc.*, 475 U.S. at 650.

The 2007 Arbitration Provision covers disputes "relating to *any* relationship between or among Vemma [and] its . . . distributors[.]" Doc. 18-1 at 13 (emphasis added). All of Plaintiffs claims arise from and relate to his relationship with Vemma. Count One alleges that Plaintiff contracted with Vemma to use in his copyrighted materials to promote Vemma's products, and that Vemma instead reproduced, displayed, advertised, and sold the materials without his authorization. *See* Doc. 13 at 19-21. Count Two alleges that Vemma vicariously or contributorily infringed Plaintiff's copyrighted CDs and relies on the same facts as Count One. *Id*. at 21-22. Count Three alleges that Vemma breached separate speaking contracts Plaintiff had with Vemma, and that Vemma breached a contract to publish and pay Plaintiff royalties for his book, *The Mangosteen Revolution – Volume I*. *Id*. at 22-23. Count Four alleges that Vemma asked Plaintiff to speak about its products with international doctors and government officials in foreign countries, and, as result of those speaking engagements, Vemma was unjustly enriched by increased sales of its products. *Id*. at 24. Count Five asserts a racketeering claim under 18 U.S.C. §§ 1961-62, alleging that Vemma knowingly participating in the unauthorized copying and distribution of his copyrighted CDs. *Id.* at 24-25.

Each of these claims arise out of Plaintiff's relationship with Vemma – either Vemma's contractual enlistment of Plaintiff to speak and use his copyrighted materials to promote Vemma products, or alleged separate contracts regarding speaking and use of his materials. Because Plaintiff is a distributor within the meaning of the Arbitration Provision and his claims arise out of a relationship with Vemma, his claims are subject to

arbitration. Doc. 18-1 at 13 ("If a dispute arises relating to any relationship between or among Vemma, its officers, employees, distributors, or vendors," the parties agree to arbitration). This holding comports with the federal policy favoring arbitration when the scope of the arbitration agreement is ambiguous. *Goldman, Sachs & Co.*, 747 F.3d at 741-42.[3]

**IT IS ORDERED:**

1. Vemma's motion to compel arbitration and dismiss (Doc. 18) is **granted**. Plaintiff's claims against Vemma are subject to arbitration, and those claims are dismissed without prejudice.

2. Plaintiff's motion for leave to file sur-reply (Doc. 30) is **denied** in light of the opportunity Plaintiff's counsel was given to address all of the issues in this case during oral argument.

Dated this 30th day of January, 2018.

David G. Campbell
United States District Judge

---

[3] In light of this conclusion, the Court need not decide whether Plaintiff's claims fall within other portions of 2007 Arbitration Provision, such as whether they constitute "a dispute . . . arising out of any products or services sold by Vemma." Doc. 18-1 at 13.