**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Edwards, | No. CV-17-02133-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Vemma Nutrition, et al., | |
| Defendants. | |

Pending before the Court are motions for attorneys' fees filed by Defendants Vemma Nutrition Company ("Vemma Nutrition")[1] (Doc. 166), Vemma International Holdings Incorporated ("Vemma Holdings") (Doc. 167), Bethany and Tom Alkazin ("the Alkazins") (Doc. 168), and Haresh Mehta ("Mehta")[2] (Doc. 169). For the following reasons, Vemma Nutrition's motion will be denied, Vemma Holdings' and the Alkazins' motion will be granted in part and denied in part, and Mehta's motion will be granted. The Court will award $47,833.18 to Vemma Holdings, $21,228 to the Alkazins, and $11,536 to Mehta, to be assessed against Edwards and his counsel in this action, Florin Ivan ("Ivan") and Justin Clark ("Clark"), with Edwards responsible for 60% of the overall award and Ivan and Clark each responsible for 20%.

---

[1]    Vemma Nutrition Company previously clarified that it is the party named in the first amended complaint as "Vemma Nutrition, Inc." (Doc. 18 at 1 n.1.)

[2]    This order refers to Haresh Mehta as "Mehta," even though Edwards also sued another defendant with the same last name (Tarak Mehta).

# BACKGROUND

On July 3, 2017, Plaintiff initiated this action by filing a *pro se* Complaint.  (Doc. 1.)  On August 25, 2017, Plaintiff—now represented by Clark—filed a First Amended Complaint ("FAC").  (Doc. 13.)

I.    Dismissal of Vemma Nutrition

On September 15, 2017, Vemma Nutrition—the only Defendant served at that time—filed a Motion to Compel Arbitration and Dismiss Action (Doc. 18), arguing that "the parties' contract included a broad arbitration clause requiring arbitration of any dispute relating to the parties' 'relationship.'"  (Doc. 18 at 1-2.)  The motion specified that if the motion were granted, Vemma Nutrition would "file an application for recovery of its attorneys' fees pursuant to [LRCiv] 54.2 and A.R.S. § 12-341.01."  (*Id.* at 2.)

In his response, Edwards argued that the contract containing the arbitration clause was a "clickwrap" agreement in which a user becomes an "Affiliate" of Vemma Nutrition by filling out an online application and clicking an "OK" button to assent to Vemma Nutrition's terms—but someone else enrolled him without his knowledge or consent, such that he neither clicked the button nor saw the terms.  (Doc. 24 at 2-6.)  He further argued that the adhesion contract was unenforceable due to unconscionability, in part because Vemma retained the right to modify the contract at any time, without the other party's assent.  (*Id.* at 6-10.)  Finally, he argued that his claims—namely, copyright infringement and breach of other contracts (not the one containing the arbitration clause)—fell outside the scope of the agreement containing the arbitration clause.  (*Id.* at 10-15.)

On January 31, 2018, the Court issued a 16-page opinion granting the motion, holding that Edwards's claims against Vemma Nutrition were subject to arbitration and thus dismissing those claims without prejudice.  (Doc. 61.)  The Court held that even if Edwards had been enrolled as an Affiliate by another person "without his knowledge or permission," Edwards subsequently ratified the contract by (1) participating as an Affiliate between 2007 and 2015, which required annual membership renewal, and (2) cashing at least 45 commission checks from Vemma Nutrition, which included endorsement language

stating, "I have read, agreed with and am in compliance with current Vemma policies and procedures." (*Id.* at 4.) The Court added, "The fact that Plaintiff did not see Vemma's policies and procedures, which include the Arbitration Provision, does not mean that he did not agree to the Arbitration Provision" because he "could easily have accessed" it. (*Id.* at 6.)

However, the Court agreed with Edwards that the agreement was an adhesion contract and that "the unilateral modification clause is substantively unconscionable." (*Id.* at 7.) The Court found the unilateral modification provision to be "particularly salient in this case because Vemma [Nutrition] modified its Arbitration Provision with Plaintiff." (*Id.* at 8.) Specifically, when Edwards was enrolled as an Affiliate in 2007, the Arbitration Provision applied to disputes "relating to any relationship between or among Vemma, its officers, employees, distributors or vendors," but it was modified by 2015 to apply to disputes "relating to any relationship between or among Vemma, its *Affiliates*, officers, employees, distributors or vendors." (*Id.* at 8-9, emphasis added.) The Court thus severed the unconscionable unilateral modification provision and held that the 2015 contractual language was not binding on Edwards, but the 2007 language was. (*Id.* at 10.)

The Court then analyzed whether Edwards could be considered a "distributor," discussed evidence for and against construing "distributor" in a manner that would include Edwards, and determined that the 2007 Agreement was "ambiguous" as to the meaning of "distributor." (*Id.* at 12-14.) In light of this ambiguity, the Court applied the "presumption of arbitrability" and construed "distributor" to include Edwards. (*Id.* at 14-15.)

Finally, the Court construed the arbitration clause broadly, such that the "relationship" between Vemma Nutrition and Edwards (as a "distributor") covered claims that did not arise out of the contract containing the arbitration clause and had nothing to do with Edwards's role as a "distributor" or Affiliate. (*Id.* at 15-16.)

The Court therefore granted Vemma Nutrition's motion to compel arbitration and dismissed Edwards's claims against Vemma Nutrition without prejudice. (*Id*. at 16.)

…

II.     <u>First Dismissal Of The Alkazins, Mehta, And Vemma Holdings</u>

On November 29, 2017, the Alkazins and Vemma Holdings waived service.  (Doc. 37.)  Mehta was served on December 11, 2017.  (Doc. 39.)

In early 2018, Mehta filed a motion to dismiss the FAC for lack of personal jurisdiction (Doc. 57), the Alkazins filed a motion to dismiss the FAC for lack of personal jurisdiction (Doc. 74), and Vemma Holdings filed a motion to dismiss the FAC for failure to state a claim.  (Doc. 70).

Also in early 2018, Ivan filed a notice of appearance, which stated that the law firm Ivan & Kilmark, PLC was appearing on behalf of Edwards as associate counsel, associating with lead counsel J. Clark Law Firm, P.L.L.C.  (Doc. 68.)

On July 20, 2018, the Court issued an opinion granting all three motions.  (Doc. 99.)  As for the two motions to dismiss for lack of personal jurisdiction, the Court noted that Edwards asserted specific jurisdiction, as opposed to general jurisdiction, and determined that the "purposeful direction" test applied, as opposed to the "purposeful availment" test.  *Id.* at 4.  Under the purposeful direction test, jurisdiction exists when the defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.* at 5 (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017)).

The Court noted that the FAC "broadly alleges that Mr. Alkazin has 'transacted business in this district and throughout the United States,' but it does not allege . . . any potential harm in Arizona that would be anything more than random, fortuitous, or attenuated."  *Id.* at 6.  The Court determined that the FAC did not allege facts demonstrating the Alkazins had caused any harm suffered in Arizona and therefore dismissed the FAC as to the Alkazins, with leave to amend within 30 days "[i]f Dr. Edwards has such facts."  *Id.* at 6-7.

The Court similarly determined the FAC did not allege facts demonstrating that Mehta—a resident of South Carolina who allegedly hid one of Edwards's book scripts in South Carolina and used Edwards's copyrighted materials to expand Vemma Nutrition's

presence into India—had caused any harm suffered in Arizona. *Id.* at 7. The Court dismissed the FAC as to Mehta without granting leave to amend. *Id.*

Finally, in granting Vemma Holdings' motion to dismiss, the Court concluded that "the FAC impermissibly refers to the Vemma corporate defendants without differentiation," noting that the FAC "specifically defines 'Vemma' to include both Vemma Nutrition and [Vemma Holdings]." (Doc. 99 at 9.) The Court found that the lack of differentiation "results in confusion as to which claims and theories remain against [Vemma Holdings]," considering that Vemma Nutrition had been dismissed due to the binding arbitration agreement, and "the FAC neither alleges that [Vemma Nutrition and Vemma Holdings] are alter egos, nor does it allege separate facts against Vemma Holdings that would give rise to independent liability." *Id.* The Court granted Edwards leave to amend within 30 days, adding that "[t]he Second Amended Complaint should clearly set out which allegations apply to [Vemma Holdings]." *Id.* at 10.

The Court concluded the opinion with the summation, "The Court grants the motions to dismiss and allows Plaintiff to amend the complaint to plead facts showing whether he suffered harm in Arizona based on the Alkazins' conduct and to clarify which allegations apply to Defendant [Vemma Holdings]." (Doc. 99 at 10-11.) The Court then issued the following orders:

1. Defendant Haresh Mehta's Motion to Dismiss, (Doc. 57), is **GRANTED**.

2. Defendants Tom and Bethany Alkazin's Motion to Dismiss, (doc. 74), is **GRANTED with leave to amend within 30 days.**

3. Defendant Vemma International Holdings Inc.'s Motion to Dismiss, (doc. 70), is **GRANTED with leave to amend within 30 days.**

4. Plaintiff John Edwards may amend the complaint to clarify which allegations and claims apply to Vemma International Holdings and to state facts, if any, which suggest that Plaintiff was harmed in Arizona by the conduct of the Alkazins.

(Doc. 99 at 11.)

…

…

- 5 -

III. <u>Second Dismissal Of The Alkazins, Mehta, And Vemma Holdings</u>

On August 20, 2018, Edwards filed a Second Amended Complaint ("SAC"), which named all of the non-fictitious Defendants that had been named in the FAC. (Doc. 106-1.) The SAC was filed and signed by Clark of J. Clark Law Firm, PLLC. Although Ivan had previously filed a notice of appearance as associate counsel for Edwards, neither Ivan's name nor his law firm's name appears on the SAC. (*Id.*)

On September 4, 2018, the Alkazins filed a motion to dismiss the SAC for lack of personal jurisdiction, or alternatively to compel arbitration (Doc. 112), and Vemma Holdings filed a motion to dismiss the SAC for failure to state a claim (Doc. 114).

Things were a little more complicated regarding Mehta because he had already been dismissed without leave to amend. Thus, the Court *sua sponte* questioned the appropriateness of Edwards's effort to rename Mehta in the SAC. On August 31, 2018, the Court issued a written order stating that it had reviewed the named parties in the SAC and found that "Mehta was named as a Defendant after having been dismissed for lack of jurisdiction . . . and without leave to amend." (Doc. 111.) The Court thus ordered Edwards to show cause, by September 13, 2018, as to why Mehta should not be dismissed from the action. *Id.* The Court also set a status hearing on that date to discuss the parties' request for extensions of the pending deadlines in the case. *Id.* Finally, the Court directed the Clerk of Court to dismiss Mehta, without further notice, on September 14, 2018 if Edwards failed to comply with the order to show cause.

On September 13, 2018, at the status conference, attorneys Clark and Ivan were both present, but Ivan did all the talking on behalf of Edwards. (Doc. 124 at 2-13.) During the hearing, the Court provided Edwards's counsel with the following explanation concerning the July 20, 2018 order granting the Alkazins' motion to dismiss with leave to amend and granting Mehta's motion to dismiss without leave to amend:

> I did dismiss [Mehta], and I didn't give you leave to amend with respect to him.
>
> I will tell you what my thinking was because he and the Alkazins . . . the allegations as it pertains to any sort of damage that they inflicted on . . . the plaintiff in Arizona were very insufficient. Because all the allegations as it

pertains to . . . Mr. Mehta had to do with his activities in India, I just didn't see that there was any possibility you were going to make any claim that there was any damage done to Dr. Edwards, who is not an Arizona resident, in Arizona.

Similarly, I felt the same way about the Alkazins . . . . However, because they are residents of Nevada, I considered that there was more possibility that you could actually do that with some specificity, which is why I gave you leave to amend.

(Doc. 124 at 2-3.)

During the status conference, Ivan attempted to make arguments regarding why Mehta should not be dismissed, but the Court prevented Ivan from doing so, stating, "if you want to address the Mehta issue, because they're not here, you probably need to do it in writing." *Id.* at 4. Ivan nevertheless stated that he "didn't see the words 'with prejudice'" in the order dismissing Mehta, and the Court responded by reiterating that the dismissal was without leave to amend. *Id.* The Court added, "[i]f you feel like you want me to reconsider, or whatever else, if you feel like you still have access to such a motion, you can file it." *Id.* at 5.

The status conference ended at 10:27 a.m. (*id.* at 13), and Edwards did not file a written response to the order to show cause by the end of that day. Accordingly, per the Court's August 31, 2018 order (Doc. 111), the Clerk of Court dismissed Mehta the following day. (Doc. 120.)

On September 28, 2018, Edwards filed a "motion for reconsideration," requesting that the Court vacate the Clerk's summary dismissal of Mehta. (Doc. 121.) The motion was signed by Ivan. (*Id.*)

On October 1, 2018, the Court granted the motion for reconsideration and reinstated Mehta.[3] (Doc. 122.)

_____

[3]    The "motion for reconsideration" (Doc. 121) is not a picture of clarity. Edwards's claim that he had "at a minimum complied with the Court's order to show cause" (Doc. 121 at 3) is baseless. Edwards did not file a written response to the Court's order to show cause by the September 13, 2018 deadline and the Court expressly refused to allow him to respond orally during the September 13, 2018 status conference, confirming multiple times that that such a response would need to be done "in writing" and that counsel would need to "file it." (Doc. 124 at 4-5.) The Court did not extend the September 13, 2018 deadline during the status conference or at any other time. Because Edwards failed to comply with the Court's order to show cause by September 13, 2018, the Clerk properly dismissed Mehta. To the extent that Edwards sought leave to file a belated written response, the

- 7 -

On October 4, 2018, Edwards filed responses to the motions to dismiss that had been filed by Vemma Holdings and the Alkazins. (Docs. 125, 126.) The former response was jointly signed by Clark and Ivan but the latter response was only signed by Ivan. (*Id.*)

On November 8, 2018, Mehta filed a motion which he titled "Former Defendant Haresh Mehta's Motion to Clarify Dismissal and Alternative Renewal of Motion to Dismiss." (Doc. 131.)

On November 19, 2018, Edwards filed a motion to strike Mehta's motion. (Doc. 136.) Both Clark and Ivan were identified as counsel of record on the first page of the motion, but it was signed by Ivan alone. (*Id.*)

On December 17, 2018, the Court issued an order denying the motion to strike Mehta's motion (as well as denying a different motion to strike that Edwards had filed). (Doc. 143.) Among other things, this order noted that "[i]t is unfortunate that [Edwards] has wasted so much of the Court's and the other parties' time by filing baseless motions to strike." (*Id.* at 3.)

On December 31, 2018, Edwards filed a response to Mehta's motion to dismiss. (Doc. 144.) Both Clark and Ivan were identified as counsel of record on the first page of the response, but it was signed by Ivan alone. (*Id.*)

On May 20, 2019, the Court granted the three pending motions to dismiss. (Doc. 148.) The Court noted that "although the SAC purports to assert three new causes of action that don't appear in the FAC, and also purports to seek certain new remedies that weren't sought in the FAC, the Court did not grant Edwards leave to amend his FAC in this fashion"

---

motion should have been brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and should have explained why Edwards's failure to file a written response by September 13, 2018 was "excusable neglect." Fed. R. Civ. P. 60(b)(1); *see also* Fed. R. Civ. P. 6(b)(1)(B). The Court's order to grant the motion and reinstate Mehta was not accompanied by a reasoned opinion, and the case having since been reassigned to the undersigned judge, it is unclear why the motion was granted. Edwards had requested leave to file a supplemental memorandum within 10 days of the Court's ruling "to the extent the Court desires additional briefing on the issues" (Doc. 121 at 3), but the Court did not specify whether this briefing was desired and permitted. (Doc. 122.) Thus, at no point did Edwards respond to the order to show cause.

and struck the newly added claims and remedies.  (*Id.* at 7.)

As to the Alkazins, the Court dismissed them again for lack of personal jurisdiction, noting that the SAC did not include facts suggesting that Plaintiff was harmed in Arizona by their conduct.  (*Id.* at 8.)  The Court held that Edwards's attempts to establish personal jurisdiction by other means exceeded the scope of the Court's leave to amend.  (*Id.*)  The Court also held that Edwards could not rely on a theory of general personal jurisdiction because he had waived any reliance on that theory in his response to the FAC.  (*Id.*)

As to Mehta, the Court noted that Mehta had been dismissed from the FAC without leave to amend, so no claims against Mehta should have been reasserted in the SAC, and that even if amendment as to Mehta had been permissible, the SAC did not add facts that would establish jurisdiction over Mehta.  (*Id.* at 9.)

As to Vemma Holdings, the Court held that the argument advanced in the SAC that Vemma Holdings is the alter ego of Vemma Nutrition was a futile argument that would necessarily result in the dismissal of Vemma Holdings, and that at any rate the argument was waived.  (*Id.* at 10-11.)

The Alkazins, Mehta, and Vemma Holdings requested attorneys' fees in their motions to dismiss.  (Doc. 112 at 10, 17; Doc. 114 at 12; Doc. 131 at 8.)  The Court noted that it "tend[ed] to share the movants' belief that Edwards's conduct was unreasonable and had the effect of unfairly driving up his opponents' costs," but the Court denied the requests without prejudice and ordered that any motions for attorneys' fees (1) should include more fully developed briefing on the legal justifications for the fees, (2) should follow final judgment, (3) should comply with Local Rule 54.2, and (4) should be accompanied by an itemized statement of legal services in a format specified by the Court.  (*Id.* at 13-15.)

IV.    The Attorneys' Fees Motions

On June 19, 2019, the Court dismissed the remaining defendants in the action without leave to amend, directed the Clerk of Court to enter judgment, and ordered that any Defendant wishing to file a motion for attorneys' fees do so within 14 days of entry of judgment. (Doc. 156.)  The clerk entered judgment on June 19, 2019 (Doc. 157), such that

all motions for attorneys' fees were due by July 3, 2019.  *See also* LRCiv 54.2(b)(2).

On July 3, 2019, Vemma Nutrition, Vemma Holdings, the Alkazins, and Mehta filed motions for attorneys' fees.[4]  (Docs. 166, 167, 168, 169.)

**DISCUSSION**

I.    Vemma Nutrition

Vemma Nutrition seeks attorneys' fees pursuant to an Arizona statute that allows the Court, in its discretion, to award fees "[i]n any contested action arising out of a contract."  A.R.S. § 12-341.01.

As a preliminary matter, it is unclear whether the statute applies to this action—that is, that the action is one "arising out of a contract."  To determine whether an action arose out of a contract for purposes of this statute, courts examine "the nature of the action and the surrounding circumstances" and analyze the "essence of the action."  *Keystone Floor & More, LLC v. Ariz. Registrar of Contractors*, 219 P.3d 237, 240 (Ariz. Ct. App. 2009).  "Generally, the words 'arising out of a contract' describe an action in which a contract was the main factor causing the dispute."  *Id.*  The statute does not apply "if the contract is a factual predicate to the action but not the essential basis of it."  *Id.*  And when the action is "based on a statute rather than a contract, the peripheral involvement of a contract does not support the application of the fee statute."  *Id.*  *See generally In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 836-37 (9th Cir. 2001) (emphasizing that "where a contract is merely somewhere within the factual background, an award of fees under § 12-341.01(A) is not proper" and that "the mere existence of a contract as a factor in an action does not allow a fee award") (citations omitted).

The FAC asserted claims against Vemma Nutrition for "copyright infringement arising under the Copyright Act of 1976, Title 17 U.S.C. §§ 101 et seq" (Doc. 13 ¶ 9), alleging that Vemma Nutrition made copies of CDs containing tracks from Edwards's

---

[4]     Mehta's motion was filed approximately 57 minutes late, at 12:57 a.m. on July 4, 2019.   Mehta's attorney provided good reasons for the late filing (Doc. 169-4), the delay was less than an hour, the delay prejudiced no one, and there was no bad faith involved. The Court thus deemed the motion timely pursuant to Federal Rule of Civil Procedure 6(b). (Doc. 181 at 5 n.2.)

copyrighted CDs without Edwards's permission (*id.* ¶ 26) and that Vemma Nutrition "knowingly induced, participated in, aided and abetted, and profited from the copying and distribution of" the copyrighted works (*id.* ¶ 27; *see also id.* ¶¶ 31-35, 56-74). The FAC also asserted a claim against Vemma Nutrition for breach of contract,[5] alleging the existence of contracts engaging Edwards for speaking engagements and agreeing to publish a book Edwards authored. (*Id.* ¶¶ 37-39, 44-47, 50-54, 76, 78). The other claims were for unjust enrichment and an alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. (*Id.* ¶¶ 81-90.)

Edwards argues that the action did not arise out of contract, noting that only one of his claims against Vemma Nutrition was for breach of contract. (Doc. 188 at 30.) Vemma Nutrition's only reply to that argument is that "[t]he sole contract-based issue litigated and decided between these two parties was whether Plaintiff had a contractual obligation to arbitrate his claims," adding that "[o]n that issue, Vemma Nutrition prevailed."[6] (Doc. 197 at 1-2.) But Vemma Nutrition's reply misses the mark—the question before the Court is whether the *action* arose out of contract, not whether the *dismissal* was due to a contractual provision.

Vemma Nutrition's motion for attorneys' fees cites various cases in which a district court compelled arbitration and then applied A.R.S. § 12-341.01. In some of those cases, the entire *action* sought declaratory judgment on the issue of arbitration. *Arnold v. Standard Pac. of Arizona Inc.*, 2016 WL 7046462, *2–3 (D. Ariz. 2016); *Ameriprise Fin. Servs. Inc. v. Ekweani*, 2015 WL 3823302, *1 (D. Ariz. 2015). Clearly an action arises out of a contract where the complaint seeks only the Court's interpretation of a contractual

---

[5]     The contracts Vemma Nutrition allegedly breached were unrelated to the clickwrap contract containing the arbitration provision.

[6]     Vemma Holdings replied somewhat differently: "It is true that Plaintiff asserted multiple other claims [besides breach of contract] against all of the defendants, including Vemma Holdings. However, Plaintiff placed particular emphasis on his breach of contract claim, asserting the breach of several 'speaking contracts' and an alleged book-publishing contract, for which he claimed to have suffered total damages in excess of $4 million." (Doc. 196 at 7.) This argument was not incorporated into Vemma Nutrition's reply, and at any rate, the Court disagrees with Vemma Holdings' assessment. In the Court's view, if anything, Edwards placed particular emphasis on the copyright infringement claims, devoting a greater portion of the FAC (and of the SAC) to those claims.

arbitration clause.  That is not the case here.

As for *Sandstone Mktg., Inc. v. Precision Converters, Inc.*, 2012 WL 6217539 (D. Ariz. 2012), the issue there was whether winning a motion to compel arbitration makes the movant a "successful party" under A.R.S. § 12-341.01.  It was not disputed whether the action arose out of a contract.  Here, the issue is whether a dismissal arising from a contractual arbitration clause converts the entire action into one "arising out of contract." *Sandstone* provides no support for the argument that winning a motion to compel arbitration, where the underlying lawsuit largely consisted of copyright infringement claims, necessarily means the entire action arose out of a contract.

Nevertheless, the Court need not resolve whether the action arose out of a contract. Assuming *arguendo* that A.R.S. § 12-341.01 applies here, the Court does not find, after weighing the applicable factors, that attorneys' fees should be awarded under the circumstances.

The factors Arizona courts have listed as "useful" in determining whether to award fees pursuant to A.R.S. § 12-341.01 include (1) the merits of the claim or defense of the unsuccessful party; (2) whether the litigation could have been avoided or settled; (3) whether assessing fees would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) whether the legal question was novel or had been previously adjudicated; and (6) whether an award would discourage other parties with tenable claims or defenses from litigating them.  *Associated Indem. Corp. v. Warner,* 694 P.2d 1181, 1184 (Ariz. 1985).

Here, Vemma Nutrition prevailed with respect to all relief sought—it was dismissed from the action, which is all it requested.  Thus, the fourth factor weighs in favor of granting attorneys' fees.  But the other five factors are neutral or weigh against it.

As for the first factor (the merits of Edwards's arguments), the Court's January 31, 2018 order made clear that the arbitration issue presented a very close call.  Indeed, the Court found that the unilateral modification clause was substantively unconscionable and severed it. (Doc. 61 at 10.)  Once that clause was severed, the Court found that the language

of the 2007 agreement was "ambiguous" as to whether the arbitration clause applied to Edwards, and the Court had to apply a presumption in favor of arbitration to conclude that it did. (*Id.* at 14-15.) Moreover, Edwards's argument that his claims fell outside the scope of the arbitration agreement was reasonable, albeit ultimately unsuccessful.

As for the second factor (whether litigation could have been avoided), although Edwards obviously could have avoided litigation by choosing to back down in response to Vemma Nutrition's arbitrability arguments, he had legitimate reasons to advance his argument that the arbitration clause didn't apply to him. *Cf. Arnold v. Standard Pac. of Arizona Inc.*, 2016 WL 7046462, *3 (D. Ariz. 2016) ("The challenge to the warranty arbitration provision was necessary to provide Plaintiff with a fair forum to seek relief under her contract. As the Court found, the warranty arbitration provision did not provide Plaintiff with an 'effective substitute for the judicial forum.'").

As for the third factor (extreme hardship), Edwards submitted an affidavit in which he declared under penalty of perjury that he is in dire financial straits and assessing fees would cause extreme hardship. (Doc. 188 at Ex. F ¶¶ 5-15.) However, as discussed *infra*, there are reasons to question this affidavit. Thus, the third factor is either neutral or weighs weakly against granting the request for fees.

As for the fifth factor (novelty), the construction of the arbitration clause in question had not been previously adjudicated. *Compare Arnold*, 2016 WL 7046462 at *3 (arbitration provision already determined unenforceable by Hawaii Supreme Court).

And finally, as for the sixth factor (effect on other parties), in the context of a clickwrap adhesion contract deemed to be substantively unconscionable in part, the Court finds that an award of attorneys' fees could chill future litigants from challenging the enforceability of similar arbitration clauses where a meritorious unconscionability argument could be made.

Vemma Nutrition's motion also includes a lengthy discussion of what it characterizes as "a long and outrageous campaign of threats and intimidation directed to Benson K. Boreyko, a founder an officer of Vemma Nutrition and Vemma Holdings, and

Tom Alkazin." (Doc. 166 at 2.) Vemma Nutrition included a declaration of Benson K. Boreyko (Doc. 166-1 at 32-33), attached to which are screenshots of text messages and transcripts of voicemail messages that Edwards sent to Boreyko's personal cell phone. (*Id.* at 35-50.) The messages were often irate and sarcastic in tone, and they contained various threats. One such message stated, in part:

> Settle as per the courts or I start calling and personally visiting all Vemma leaders [sic] homes on my contact sheet (I have them all) in my local area. . . . I'm going outside that crappy trick and pony show you are running inside the legal circles there[.] I will now move on the offensive outside your circle of influence there and sink you in the courts of public opinion from my circles of influence[.] . . . You insist to play dirty so I will return you the favor bro!

(*Id.* at 35-36.) Other messages stated or suggested that if Vemma Nutrition did not settle or otherwise alter its strategy in this litigation, Edwards would somehow ensure that Boreyko was imprisoned: "Try filing any paper[,] punk[,] [and] watch where you land up – behind Federal Bars!" (*Id.* at 42.) Others contained vague, menacing language with no specified threat: "Alright, keep playing with me. You'd better take care of your business, bro. Alright. I hope you hear me! You think I'm joking with you? This ain't gonna never end til you pay your bill. You hear me? Alright, keep it up! Keep it up! You will find out who I am!" (*Id.* at 45.)

Edwards responds that "the evidentiary foundation of the alleged communications [is] not conclusively established in the record." (Doc. 188 at 5.) But significantly, Edwards does not deny that he left those messages for Boreyko.

The messages Edwards left on Boreyko's personal cell phone were, at the very least, unprofessional, inappropriate, and far from the standard of dignity and civility this Court expects from its litigants. Moreover, the Court agrees with Vemma Nutrition that because an award of attorneys' fees pursuant to A.R.S. § 12-341.01 is discretionary, "the Court should, in its discretion, take Plaintiff's conduct into account in determining an appropriate award." (Doc. 197.) The Court finds that Edwards's out-of-court conduct in personally leaving hostile messages for Boreyko weighs in favor of awarding fees. Nevertheless, taking all the circumstances into consideration and weighing the factors for and against an

award of fees, the Court has determined not to exercise its discretion to award fees to Vemma Nutrition pursuant to A.R.S. § 12-341.01.

II.     Vemma Holdings, The Alkazins, And Mehta

The attorneys' fees motions of Vemma Holdings (Doc. 167), the Alkazins (Doc. 168), and Mehta (Doc. 169) focus on the litigation following the August 20, 2018 filing of the SAC (Doc. 106-1), which necessitated a round of motions to dismiss (Docs. 112, 114, 131), all of which were addressed and granted in the Court's May 20, 2019 order (Doc. 148). The legal issues in these attorneys' fees motions overlap substantially, and therefore the Court will address the three motions together.

Collectively, these defendants base their attorneys' fees motions on three grounds: (1) 28 U.S.C. § 1927, (2) Rule 11 of the Federal Rules of Civil Procedure, and (3) the Court's inherent powers.

A.     **28 U.S.C. § 1927**

Vemma Holdings, the Alkazins, and Mehta seek fees pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute applies only to attorneys, not to represented parties themselves.

As the Court explained in its July 23, 2019 order, the Court may sanction Clark and/or Ivan pursuant to 28 U.S.C. § 1927 if either attorney knowingly or recklessly raised a frivolous argument. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Knowing or reckless frivolousness is the sanctionable conduct alleged in the § 1927 sections of the attorneys' fees motions. (Doc. 167 at 9 ["The filing of such a facially defective SAC unquestionably multiplied these proceedings, and Vemma Holdings submits that Edwards' counsel did so unreasonably."]; Doc. 168 at 9 [same]; Doc. 169 at 5 ["Plaintiff unreasonably expanded the scope of these proceedings and riddled its participants with superficial legal arguments . . . after repeated requests and warnings from counsel and this Court."].) "Recklessness," in this context, means "departure from

- 15 -

ordinary standards of care that disregards a known or obvious risk." *In re Girardi*, 611 F.3d 1027, 1038 (9th Cir. 2010).

The SAC was frivolous, and the Court finds that Clark recklessly filed it[7] and Clark and Ivan recklessly defended it. Indeed, Vemma Holdings, the Alkazins, and Mehta were all dismissed from the SAC *for the exact same reasons they were dismissed from the FAC*. Leave to amend was narrowly granted as to Vemma Holdings and the Alkazins, but Clark did not even attempt to amend in the manner the Court permitted. Instead, Clark used the SAC as a vehicle to resurrect an already-waived and at-any-rate-futile alter-ego theory as to Vemma Holdings and conceded an inability to amend in the manner permitted by the Court as to the Alkazins, choosing instead to switch to an already-waived jurisdictional theory outside the scope of leave to amend. (Doc. 148 at 7-11.) Clark and Ivan do not identify any ambiguity in the Court's July 20, 2018 order granting narrowly-circumscribed leave to amend and the Court cannot perceive any. The Court's language was clear, emphatic, and in plain English, and the Court cannot view counsel's disregard of the scope of leave to amend as a "misunderstanding." (Doc. 188 at 23, 25.) Clark ignored the limits of the Court's leave to amend, and doing so was reckless, as was Ivan's subsequent attempt to defend the sufficiency of the amendment effort.

As for Mehta, the claims against him in the FAC had been dismissed without leave to amend, so he should not have been renamed as a defendant in the SAC at all. (*Id.* at 9.) Clark's and Ivan's insistence that it's okay to rename a defendant when no leave to amend was granted simply because the dismissal was not "with prejudice" has no basis in law,[8]

_____

[7]     Ivan averred in a declaration that he "conferred with co-counsel, Mr. Clark, as part of the filing of the Second Amended Complaint." (Doc. 186 at 19.) And Clark averred that "Mr. Ivan and myself concluded there were still viable claims . . . and that it was necessary to include these claims to protect Plaintiff's rights . . . ." (Doc. 188 at 96.) Clark further stated, "This is exactly why I sought the association of Mr. Ivan so that we could ensure that, between the two of us, we were appropriately and reasonably prosecuting this case on behalf of the Plaintiff." (Doc. 188-1 at 28.) Ivan was counsel of record when the SAC was filed, and the Court infers from these affidavits that his advice may have been instrumental in the drafting of the SAC. Nevertheless, the SAC was filed by Clark and bears only his name. (Doc. 106-1.)

[8]     A dismissal for lack of jurisdiction is necessarily "without prejudice." *Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) ("Dismissals for lack of jurisdiction should be without prejudice so that a plaintiff may reassert his claims in a

- 16 -

and it was reckless to operate off this faulty assumption without doing the basic research that would have revealed the assumption was wrong. Moreover, even if the unusual circumstances concerning the reinstatement of Mehta as a defendant on October 1, 2018 might create some question as to whether it was reckless for Clark and Ivan to believe it was *procedurally* permissible to attempt to name Mehta as a defendant in the SAC,[9] sanctions remain appropriate under § 1927 because the amendments in the SAC regarding Mehta were *substantively* frivolous, too. Specifically, Clark and Ivan's new theory concerning Mehta improperly conflated the concepts of venue and jurisdiction. (Doc. 148 at 9.)

Clark and Ivan argue they should not be subject to attorneys' fees because defense counsel failed to mention, during the meet-and-confer process that preceded the filing of the attorneys' fee motions, that the defendants would be seeking fees against them under 28 U.S.C. § 1927. (Doc. 186 at 6; Doc. 188 at 20.) The Court is not persuaded by this argument. Clark and Ivan made the highly questionable decision to tell opposing counsel to communicate directly with Edwards regarding the attorneys' fees motions rather than with them. (Doc. 186 at 6; Doc. 188 at 20.) By declining the opportunity to confer, Clark and Ivan have waived this argument. Moreover, Clark and Ivan knew that 28 U.S.C. § 1927 could be a basis for sanctions after Vemma Holdings and the Alkazins noted as much in their June 27, 2019 response to counsel's applications to withdraw as counsel of record without client consent. (Doc. 160 at 3.)

Clark's reckless filing of a baseless SAC, and Clark and Ivan's reckless defense of

_____

competent court.") (quotation marks and ellipsis omitted); *see also* Fed. R. Civ. P. 41(b) (dismissal for lack of jurisdiction is not "an adjudication on the merits"). Although the claims can be reasserted in a competent court, they cannot be reasserted in the same court after dismissal absent a judicial grant of leave to amend. Fed. R. Civ. P. 15(b) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave.").

[9] In the response to Mehta's motion for attorneys' fees, Edwards argues that Clark and Ivan construed the October 1, 2018 reinstatement order as "essentially a retroactive grant of amendment" and that "[e]ven if counsel was incorrect in [construing the October 1, 2018 order in this manner], this inadvertent misunderstanding should not be subject to sanctions." (Doc. 186 at 4-5.) Both counsel make similar claims in their supporting declarations. (Doc. 186-1 ¶ 11; Doc. 186-2 ¶ 14.)

it, multiplied these proceedings and justifies the imposition of attorneys' fees pursuant to 28 U.S.C. § 1927. The Court, in its discretion, will therefore sanction Clark and Ivan by awarding attorneys' fees to Vemma Holdings, the Alkazins, and Mehta.

### B. **Rule 11**

Mehta also seeks fees pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure. (Doc. 169 at 6.) However, Rule 11(c)(5)(A) specifies that the Court "must not impose a monetary sanction . . . against a represented party for violating Rule 11(b)(2)." Thus, Mehta cannot seek fees from Edwards—a represented party—for violating Rule 11(b)(2). To the extent that Rule 11(b)(2) could apply to Clark and Ivan, the Court need not address it, as the Court has already awarded Mehta attorneys' fees from counsel pursuant to 28 U.S.C. § 1927.

### C. **Inherent Power**

Vemma Holdings and the Alkazins also invoke the Court's "inherent power to award attorneys' fees as a sanction" against "parties and their counsel." (Doc. 167 at 6; Doc. 168 at 6.) "Under its 'inherent powers,' a district court may . . . award sanctions in the form of attorneys' fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir. 1997)). Whereas 28 U.S.C. § 1927 and Rule 11 reach "only certain individuals or conduct," the Court's inherent power "extends to a full range of litigation abuses" and exists "to fill in the interstices." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

As part of their "inherent powers" argument, Vemma Holdings and the Alkazins encourage the Court to "consider the broader circumstances surrounding Edwards' filing of his SAC"—namely the accusation that "Edwards was engaging in a behind-the-scenes campaign to intimidate Mr. Boreyko and Mr. Alkazin into settling with him for millions of dollars"—and Vemma Holdings and the Alkazins argue that "a finding that Edwards was, and remains, 'substantially motivated by vindictiveness, obduracy, or mala fides' plainly is warranted." (Doc. 168 at 8-9; *see also* Doc. 167 at 8.)

As discussed above, Edwards did not deny sending the hostile messages to Boreyko, and therefore the Court finds there is no dispute regarding their authenticity.

Edwards argues the Court should not consider the messages because they were sent "well before and well after the filing of the [SAC]" and because they were not sent "within the courtroom."[10] (Doc. 188 at 6.) As for the timing of the messages, some are dated with only the month and date, not the year. Nevertheless, the content of the messages makes clear they were sent during the course of the litigation. Other messages include the full date, such as (1) a voicemail from Edwards to Boreyko dated July 18, 2018 (Doc. 166-1 at 45), one month before the August 19, 2018 filing of the SAC, (2) another dated October 8, 2018 (*id.* at 46), three weeks after the filing of the SAC and four days after the filing of Edwards's responses to Vemma Holdings' and the Alkazins' motions to dismiss, and (3) another dated a few weeks later, on November 4, 2018 (*id.* at 47). These messages were sent right in the thick of it, for purposes of the attorneys' fees motions. And other messages sent well before and after this timeframe demonstrate that Edwards's intimidation tactics and bad intentions persisted throughout the litigation.

As for Edwards's assertion that the messages did not occur "within the courtroom" and that "no evidence has been submitted as to whether the sender or recipient or both were in the jurisdiction of this Court at the time the alleged messages were sent or received" (Doc. 188 at 6), these assertions are irrelevant. Regardless of whether the messages were sent and/or received in Arizona or Antarctica, they demonstrate that Edwards was engaged in a campaign of harassment and intimidation designed to force settlement of this litigation, which bears on the Court's assessment of whether the SAC and the resulting litigation were motivated by bad faith.

The Court finds that Edwards filed a frivolous SAC in bad faith, motivated by

---

[10] Edwards also cites Rule 408 of the Federal Rules of Evidence, but even if the messages could be interpreted as "compromise negotiations," which is a stretch, the attorneys' fees motions do not fall within the rule's prohibited uses—Vemma Holdings and the Alkazins are not proffering the messages "to prove or disprove the validity or amount of a disputed claim" or "to impeach a prior inconsistent statement or a contradiction." *See* Fed. R. Evid. 408(a).

vindictiveness, with the goal of harassing Vemma Holdings and the Alkazins—and Mehta, as well.[11] Edwards's out-of-court conduct in personally leaving hostile messages for Boreyko is consistent with this finding, as is Edwards's determination to advance frivolous arguments that could serve no purpose other than harassment, despite warnings from opposing counsel and even, regarding Mehta, the Court's *sua sponte* order to show cause. Edwards himself declared, in his messages to Boreyko, an intention to "play dirty." (Doc. 166-1 at 35-36.) The Court finds that this intention inspired the SAC and the litigation that it engendered. Thus, the Court, in its discretion, will sanction Edwards by awarding attorneys' fees to Vemma Holdings, the Alkazins, and Mehta.[12]

### D. Reasonableness Of The Requested Fees

Attorneys' fees imposed pursuant to the Court's inherent power to sanction a party that has acted in bad faith "must be compensatory rather than punitive in nature," that is, "the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). Thus, "the court can shift only those attorney's fees incurred because of the misconduct at

---

[11] Although Mehta did not base his motion for attorneys' fees on the Court's inherent powers, or on Rule 11(b)(1), both of which empower the Court to sanction Edwards for filing an SAC with the improper purpose of harassment, the Court may invoke its inherent powers and/or Rule 11 *sua sponte*. *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986).

[12] Edwards's argument that the attorneys' fees motions should have been brought earlier in the litigation is unavailing. All of the motions to dismiss discussed in this order requested attorneys' fees. Vemma Nutrition requested fees when it filed its motion to dismiss the FAC on September 15, 2017. (Doc. 18 at 2.) The Alkazins' motion to dismiss the SAC, filed on September 4, 2018, requested fees (Doc. 112 at 10, 17), as did Vemma Holdings', filed the same day (Doc. 114 at 12), and Mehta's, filed on November 8, 2018 (Doc. 131 at 8). Edwards has known—for years—that the Defendants in this litigation were seeking attorneys' fees. The Court noted that the requests for attorneys' fees may have been premature and ordered that any motions for attorneys' fees should be reserved until after judgment was entered, pursuant to Rule 54(d)(2)(B)(ii) of the Federal Rules of Civil Procedure and LRCiv 54.2. (Doc. 148 at 13-16.) The Supreme Court has made clear that sanctions "may be imposed *years* after a judgment on the merits." *Chambers*, 501 U.S. at 56. Normally, however, attorneys' fees based on the pleadings are assessed at the end of the litigation, as is the case here. *Id.* at 56 n.19 ("The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue . . . normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.") (citation omitted).

issue" and must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.*

Here, the causal link is easy to establish. The bad-faith conduct at issue was the knowing or reckless filing of an utterly frivolous SAC. Although Edwards had leave to file an SAC within clearly and narrowly delineated guidelines, his failure to even attempt to amend in accordance with the leave granted demonstrates that Edwards (and Clark and Ivan) knew that Edwards could not allege facts that would fix the deficiencies in the FAC in the manner circumscribed by the Court. Thus, the SAC should not have been filed at all. The Court concludes that all attorneys' fees incurred by these defendants after the SAC was filed on August 19, 2018 (Doc. 103), including the attorneys' fees incurred when pursuing the fee awards, were incurred because of the misconduct. These fees would not have been incurred but for Edwards's determination to file a frivolous SAC. *Haeger*, 137 S. Ct. at 1187 (causal connection in attorneys' fees cases "is appropriately framed as a but-for test"). *See also Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) ("[T]he costs of obtaining sanctions may be included in a sanctions award under § 1927.").

The Court notes that, although the fee requests consist mostly of fees incurred after the filing of the SAC on August 19, 2018 (Doc. 167 at 14-15; Doc. 168 at 11-12; Doc. 169 at 6-7), Vemma Holdings and the Alkazins also seek fees arising from a handful of time entries between July 26, 2018 and August 8, 2018 (mostly related to meet-and-confer discussions with Edwards's counsel about whether the SAC should be filed). The Court declines to award these fees because they would have been incurred regardless of whether Edwards and his counsel chose to persist with the sanctionable conduct—filing and then litigating the sufficiency of the SAC.

All told, Vemma Holdings seeks $50,960.68 ($50,356 in attorneys' fees and $604.68 in computerized research expenses) and the Alkazins seek $22,610.50 in attorneys' fees, totals which include attorneys' fees incurred researching and writing their motions to dismiss the SAC and supporting replies, preparing answers to the SAC in

accordance with court rules, and preparing fee motions and replies. (Doc. 167 at 15; Doc. 167-1 at 14, 27; Doc. 168 at 12; Doc. 168-1 at 13.) Mehta seeks $11,536 in attorneys' fees, likewise specifying that he seeks only those fees "starting *after* [Mehta's] second dismissal."[13] (Doc. 169 at 6.) After eliminating the time entries before August 19, 2018, the Court will award $47,833.18 to Vemma Holdings and $21,228 to the Alkazins, while Mehta will be awarded $11,536, as requested.

Declarations attached to the motions establish the credentials and experience of these defendants' attorneys and the rates at which they billed their clients. (Doc. 167-1 at 9-14; Doc. 168-1 at 9-13; Doc. 169-1 at 1-4.) Vemma Holdings and the Alkazins are represented by Coppersmith Brockelman PLC. Partner Kent Brockelman has practiced law for 35 years and charged $350/hour, partner Jill Chasson has practiced for 24 years and charged $325/hour, and of-counsel Katherine Hyde has practiced for 10 years and charged $215/hour. (Doc. 167-1 at 9-10.) Mehta is represented by fifth-year attorney Joel Fugate of Cronus Law, PLLC, who charged $280/hour. (Doc. 169-1 at 3.) The Court finds the hourly rates charged by the attorneys to be reasonable and, in some cases, below market rates for Phoenix attorneys of their caliber. *See, e.g.*, *Swisher Hygiene Franchise Corp. v. Clawson*, 2019 WL 4169003, *10 (D. Ariz. 2019) (finding partner rates between $284 and $484.50 per hour and associate rates between $212.50 and $276.25 to be reasonable); *see also Kaufman v. Warner Bros. Entm't Inc.*, 2019 WL 2084460, *12-13 (D. Ariz. 2019) (concluding that hourly rates of $552 and $505 were reasonable and canvassing other Arizona cases reaching similar conclusions).

The Court has reviewed the itemized billing entries submitted by Vemma Holdings (Doc. 167-1 at 22-25), the Alkazins (Doc. 168-1 at 21-23), and Mehta (Doc. 169-3 at 1-6) and finds reasonable the activities listed and the time allotted for them. Edwards complains generally that Mehta's counsel billed for "calls with counsel of other defendants in this

---

[13] Mehta's counsel avers that the amount Mehta seeks does not reflect all of the hours counsel spent working on Mehta's behalf during that timeframe, as his counsel wrote off a substantial amount of the work, and Mehta does not seek attorneys' fees for work his counsel chose not to bill to him. (Doc. 169 at 6.)

case, reviewing filings by other defendants in this case, reviewing filings by Plaintiff that Mr. Mehta never complained about . . . , reviewing court orders related to the latter, and preparing an application for fees." (Doc. 186 at 9.) The Court finds all of these to be reasonable expenditures of time in defending Mehta. Edwards did not identify any particular billing entries that appear inappropriate in either the type of task or the amount of time spent, and the Court cannot identify any inappropriate entries on its own review.

Edwards also complains very broadly that Vemma Holdings' and the Alkazins' counsel charged "for a wide variety of activities." (Doc. 188 at 25.) But the Court finds those activities were necessary for defending Vemma Holdings and the Alkazins. Edwards argues that the more experienced partners at the firm (Brockelman and Chasson) should have undertaken less work and that it would have been "more reasonable and efficient" for Hyde to do more of the work. (*Id.* at 32-33.) Edwards cites no legal authority for the proposition that experienced attorneys should be required to farm out their work to less experienced attorneys. Vemma Holdings and the Alkazins hired excellent attorneys who did excellent work. The Court will not endorse the theory that experienced attorneys should do less work because their time is worth more.

Edwards also argues the time spent was excessive[14] or "overlapping," but the Court disagrees. Multiple attorneys may, within reason, collaborate on important drafts and/or bill time for work on the same filing. And Edwards's assertion that Vemma Holdings and the Alkazins should have filed a joint motion for sanctions instead of two separate motions (Doc. 188 at 33-34) does not reflect the realities of careful drafting. Combining the separate arguments into one motion would not have saved time in drafting and may have necessitated *extra* time, as an attempt to fit the arguments for both defendants into the page

---

[14] The sole example cited by Edwards for excessive time spent was "over 10 hours of billing activity" related to Vemma Nutrition's response to Edwards's October 13, 2017 motion for leave to file a sur-reply to Vemma Nutrition's motion to dismiss. (Doc. 188 at 33.) Vemma Nutrition's 6-page response was well-researched and well-drafted and could easily have merited 10 hours of work in researching, drafting, and revising—and the response was necessary only because Edwards filed a frivolous motion. But at any rate, Vemma Nutrition's motion for attorneys' fees is denied, so these particular billing entries are not at issue.

limit for a single motion may have required more paring.

The Court therefore awards attorneys' fees as follows: $47,833.18 to Vemma Holdings, $21,228 to the Alkazins, and $11,536 to Mehta.

### E.  **Apportionment Of Fees**

Clark and Ivan acted with bad faith by recklessly filing and defending a frivolous SAC.  *Keegan*, 78 F.3d at 436 ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument . . . .").  But "bad faith" comes in various forms.  The Court accepts counsel's assertions that they lacked "vexatious intent, or malice, or ill will" toward Mehta, Vemma Holdings, or the Alkazins.  (Doc. 186 at 16, 20; Doc. 188-1 at 63.) Nothing in this litigation has suggested to the Court that Clark or Ivan had any malicious intentions.

Edwards, on the other hand, litigated this case to the hilt, including filing and defending a frivolous SAC, accompanied by an out-of-court campaign of harassment.  The Court finds Edwards's motivations and conduct throughout the course of this litigation to be more culpable than the conduct and motivations of his counsel.

For these reasons, the Court will order Edwards to pay 60% of the awarded fees, while Clark and Ivan shall each pay 20% of the awarded fees.

Thus, Edwards will pay $28,699.91 of the fees and costs awarded to Vemma Holdings, $12,736.80 of the fees awarded to the Alkazins, and $6,921.60 of the fees awarded to Mehta (*i.e.,* a total fee award of $48,358.31).

Clark will pay $9,566.64 of the fees and costs awarded to Vemma Holdings, $4,245.60 of the fees awarded to the Alkazins, and $2,307.20 of the fees awarded to Mehta (*i.e.,* a total fee award of $16,119.44).

Ivan, likewise, will pay $9,566.64 of the fees and costs awarded to Vemma Holdings, $4,245.60 of the fees awarded to the Alkazins, and $2,307.20 of the fees awarded to Mehta (*i.e.,* a total fee award of $16,119.44).

…

…

F.    **Ability To Pay**

In general, "[t]he ability of a party to pay is one factor a court should consider when imposing sanctions." *Gaskell v. Weir*, 10 F.3d 626, 629 (9th Cir. 1993). The sanctioned party has "the burden to produce probative evidence of . . . inability to pay the sanctions," as that party "knows best his or her financial situation." *Id.* Where the sanctioned party "failed to adduce any evidence of his inability to pay and did not even raise the issue below, the argument is waived." *Fed. Election Comm'n. v. Toledano*, 317 F.3d 939, 948–49 (9th Cir. 2002), *as amended on denial of reh'g* (Jan. 30, 2003).

As noted in Part I, *supra*, Edwards submitted an affidavit in which he declared under penalty of perjury that he is in dire financial straits and assessing fees would cause extreme hardship. (Doc. 188 at 59-60 ¶¶ 5-15.) Specifically, he states that (1) he is unemployed and cannot take on any employment due to the deteriorating health of his parents, for whom he is the primary caretaker, (2) paying their medical expenses and participating in this litigation has depleted his savings, and (3) he is unable to cover basic living expenses or to pay his attorneys. (*Id.*)

Edwards raised the issue of financial hardship only in response to Vemma Nutrition's fees motion, so he has arguably forfeited this affirmative defense as to the fees motions of Vemma Holdings, the Alkazins, and Mehta. Nevertheless, "[a] sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters." *United States v. Coulton*, 594 F. App'x 563, 567 (11th Cir. 2014). Having been made aware of Edwards's asserted financial difficulties in the context of Vemma Nutrition's fees motion, the Court will consider them in the context of the other three fees motions.

The Court takes Edwards's assertions of serious financial hardship into careful consideration. Vemma Holdings argues that "Plaintiff's assertion that an award of fees would cause him extreme financial hardship is difficult to square with his references to his considerable financial resources in his messages to Mr. Boreyko and Mr. Alkazin," citing an October 8, 2018 voice mail message in which Edwards said, "I got the funding now,

and my dad has made sure we have the money to fight this to eternity." (Doc. 196 at 8.) The Court notes that this message also threatens to involve Edwards's parents in his out-of-court campaign to extort a settlement: "[M]y parents are about to get in this in a minute if you don't stop this, and you ain't going to like them because they don't . . . have the feelings for you I do. . . . I'm going to let my parents proceed on and really quickly at your business. . . . My parents have had enough. They're involved now. . . . And my dad ain't joking around with you anymore." (Doc. 166-1 at 46.) Nevertheless, these out-of-court statements were not made under penalty of perjury and may have been lies or exaggerations.[15] Moreover, Edwards's financial circumstances and the health of his parents may have changed over the past year.

Vemma Holdings also argues that Edwards's assertion that he is "unable to cover basic living expenses including food, transportation, and rent" is belied by his payment of the $505 filing fee for his appeal of the judgment in this action. (Doc. 196 at 8.) Edwards requested that the Court grant him leave to proceed *in forma pauperis* on appeal. (Doc. 179 at 1.) Pursuant to Federal Rule of Appellate Procedure 24(a)(1), Edwards was required to attach an affidavit to his motion (1) demonstrating his inability to pay in the detail prescribed by Form 4 of the Appendix of Forms (available online at https://www.uscourts.gov/rules-policies/current-rules-practice-procedure/appellate-rules-forms), (2) claiming an entitlement to redress, and (3) stating the issues that the he intended to present on appeal. Edwards failed to provide such an affidavit.[16] The Court denied the request.[17] (Doc. 181 at 13.) Edwards then paid the filing fee. This does tend to suggest that Edwards is not destitute, although a $505 fee is a paltry sum compared to the attorneys' fees at issue in these motions. Thus, the Court gives the $505 fee very little weight in

---

[15]   The Court notes, however, that Edwards's parents apparently were healthy enough to fly out to Phoenix with him to attend settlement negotiations. (Doc. 179 at 12.)

[16]   Instead, he asked the Court to "forward" to him the necessary form (Doc. 179 at 1)—but this form was accessible to him online, and certainly his counsel could have provided it to him as well.

[17]   The Court based its decision on the mistaken belief that it lacked jurisdiction to grant an application to proceed *in forma pauperis* on appeal, but the denial is nevertheless justified by Edwards's failure to file the affidavit.

considering Edwards's financial situation.

More probative are Edwards's own claims about his education and earning power. Edwards attests that he is a "trained professional" and a "medical doctor," having earned two honors degrees in biology and psychology from Morehouse College, as well as a minor in music, and then earned degrees in general medicine and general surgery from the University of the West Indies. (Doc. 179 at 5.) Edwards claims to be an expert whose sought-after expertise has the potential to reap millions of dollars. (*Id.* at 16.)

Also, although Edwards was not entirely clear on this point, he appeared to argue that he was capable of paying his attorneys, and that the only reason he had not done so was their failure to send him an itemized billing statement, which he had been requesting "for months." (Doc. 179 at 8.) The Court finds that Edwards's arguments are inconsistent and undermine the credibility of his claims regarding his financial circumstances.

Finally, Edwards explained that he refused a walk-away settlement offer made shortly after the Court issued its May 20, 2019 order granting the motions to dismiss. (Doc. 179 at 16.) That order frankly stated that "[t]he Court tends to share the movants' belief that Edwards's conduct was unreasonable and had the effect of unfairly driving up his opponents' costs" and noted that to avoid sinking "any more resources into this case," the parties might "sidestep briefing" on the matter of attorneys' fees "by reaching a settlement" on that issue. (Doc. 148 at 13, 15.) The fact that Edwards was offered the opportunity to walk away without paying any fees and refused that offer, necessitating an expensive round of litigation on the issue of attorneys' fees, weighs heavily in favor of granting the fees motions. It would be unjust to allow Edwards to further drive up the costs of this litigation by stubbornly insisting on litigating the issue of attorneys' fees, despite the Court's tip-off that Edwards would likely be held accountable for them, and then to allow him to dodge those attorneys' fees by claiming financial hardship.

Thus, the Court will not reduce the amount of attorneys' fees awarded against Edwards on the basis of his asserted inability to pay.

…

### G. Oral Argument

Edwards requested oral argument on the fees motions filed by Vemma Nutrition, Vemma Holdings, and the Alkazins. (Doc. 188 at 1.) These motions have been adequately briefed and oral argument would only further drive up the fees at stake in this litigation. The request is therefore denied.

Accordingly,

**IT IS ORDERED** that:

(1)    Vemma Nutrition's motion for attorneys' fees (Doc. 166) is **denied**;

(2)    Vemma Holdings' motion for attorneys' fees (Doc. 167) is **granted in part and denied in part**;

(3)    The Alkazins' motion for attorneys' fees (Doc. 168) is **granted in part and denied in part**;

(4)    Mehta's motion for attorneys' fees (Doc. 169) is **granted**;

(5)    Edwards will pay $28,699.91 of the fees and costs awarded to Vemma Holdings, $12,736.80 of the fees awarded to the Alkazins, and $6,921.60 of the fees awarded to Mehta;

(6)    Clark will pay $9,566.64 of the fees and costs awarded to Vemma Holdings, $4,245.60 of the fees awarded to the Alkazins, and $2,307.20 of the fees awarded to Mehta;

(7)    Ivan will pay $9,566.64 of the fees and costs awarded to Vemma Holdings, $4,245.60 of the fees awarded to the Alkazins, and $2,307.20 of the fees awarded to Mehta; and

(8)    Edwards, Clark, and Ivan shall satisfy these obligations within 60 days from the date of this order.

Dated this 1st day of November, 2019.

_____
Dominic W. Lanza
United States District Judge